My name is Jose Loaiza and I am counsel for the petitioner in this case, Mr. Mendiolaza. In this case, my client, the petitioner, requested the withholding of removal and it was denied by the immigration judge and then that decision was affirmed without opinion by the board of immigration appeals. The reasoning for the denial given by the judge basically rested on a few adverse credibility, factual findings. The judge, first of all, did not believe that the persecution or the events that forced my client to flee his country of native Peru had been motivated by discrimination or persecution on the basis of either his religion or political opinion. We believe that this is contrary to the facts. Clearly it is unreasonable to conclude otherwise. My client was a peasant in the Peruvian mountains and there he was, as many other peasants have been in the past, was recruited by the Shining Path terrorist guerrillas. He was detained, interrogated, harassed and threatened with his life. He was also threatened with harm to his relatives. The terrorists represented to him that they knew his whereabouts, they knew about his affiliation with the joined their ranks. Mr. Meliolaza acquiesced under duress and committed to join them, but at the first opportunity he escaped and took refuge in the mountains for two weeks where he lived with his brother, coming only at nights for food and supplies. After that period he fled to a nearby city where he had a cousin who informed him of the possibility of coming to the United States with an agricultural visa to work as a relocating. You have to bear in mind that many of these rural peasants relocating to some other large area or urban area is almost as foreign as going to another country. So he decided to come to the United States as a sheep herder. The judge, the immigration judge did not seem to think that there were many, there could be many other reasons why he, my client would not have joined the guerrillas other than fearing for his life. But it just seems contrary to common sense and common experience to assume that there may be other reasons when the fact is that you've been threatened with your life and your family have been threatened and you have been already made certain that your whereabouts are known and you've basically been placed under surveillance. It's clear that also from the record and this is not disputed we believe by the respondent that he is an active and faithful member of the Assemblies of God Church. Their position is well known and their views are well known against terrorist groups like the Shining Path who are... Is there evidence in the records that the guerrillas knew that he was a member of the church? Yes, your honor. Yes, there is. They stated to him, we know that you are a member of the Assemblies of God Church. We know you, we know that you and your family are active in their church and that was the main motivation for my client to resist them. Now, the Shining Path group, terrorist group, they are a Maoist, a communist, basically atheistic group. And so there is a fundamental difference in a person who has the... Subscribes to the Assembly of God's religious beliefs would only naturally oppose and be against. So the immigration judge and respondents in their brief make an issue of the fact that he did not state to the terrorists, I'm against your group. But that would have been a very foolish thing to do as the judge himself grants in his opinion, part of his opinion, that people who do that don't live too long to tell the truth. Are you talking really in this case only about the withholding of removal? Yes, your honor. That's the only issue. My client did not qualify for asylum. Right. And so, it's time barred. Yes, your honor. So our standard is more likely than not. That's correct. Yes, your honor. That's precisely the point. Another point was made by the judge that there was one single incident, that the event in which my client was detained and interrogated. However, it's really misleading to characterize it that way, because that arrest, that detention, led to a series of events that were the natural result and that occurred basically by coercion and under threats. And in fact, the respondents focus on physical harm, which is actually not appropriate because the can be shown that there was actual suffering or harm. And we submit to the court that there clearly can be inferred from the events that took place that there was actual physical punishment. The respondent states that he may have been scared, but that didn't rise to the level of persecution. And we would respectfully argue that that way of the terrorist group, it just seems like splitting this hair, splitting distinctions to try to decide at what point that kind of a threat is rises to the level of persecution. It's just some other kind of scare. On the back to the point of the political opinion, what we're talking here about, whether it is more likely than not that he would have I'm just trying to address the fact that there was persecution in the past, and that, therefore, it triggers a presumption that there would be persecution if he were to go back to Peru. The Shining Path is a terrorist group that is well-cemented in Peru. In fact, in the recent months, there's been a resurgence that has been on the news. It has been on the public opinion. And it would be easy to corroborate that there indeed are, even though there was a period of time when their activities ceased after the capture of their leader, Abimael Guzman, there has been a regrouping of this group. And they are re-initiating activities, terrorist activities, particularly in the rural areas, such as the one where my client comes from. All right, Mr. Loaiz, you can see you're well over your time. You exceeded your time. So we appreciate your argument. We'll hear from the government now. Thank you, Your Honor. May it please the Court, Your Honors, Leslie McKay for the respondent, John Ashcroft. Your Honors, this case is controlled by the Supreme Court's holding in Elias Zacharias. Because no reasonable fact finder would be compelled to conclude that more likely than not the petitioner will suffer future persecution in Peru, the instant petition for review should be denied. Your Honors, no harm occurred to this petitioner that would rise to the level of past persecution. The single two-hour encounter that he had with the Shining Path, and it is appropriate to characterize it as a single encounter, he was questioned about the youth in his town and pressured to join the Shining Path. There were two threats, one directed at the petitioner, again, if he did not join the Shining Path and help their cause, and one directed more at the petitioner's entire family based on their religion. Even if you assume, even if we assume for the sake of argument that these incidents rose to the level of persecution, there's absolutely been no showing that there's a nexus between those acts and a protected ground under the INA. This was a conscription attempt only, and petitioner's testimony before the immigration judge repeatedly bears that out. Particularly at page 105, he states, they needed help to fight the military. They were looking for more youth. The only threat that was directed at him individually, again, was to pressure him to join. And the threat to his family based on the religion, he later goes on at page 103 of the testimony to link that back to the Shining Path's ultimate goals when he says, they hate religious people who don't participate with them. Everything is connected to the Shining Path's desire to bring more people into their organization for a January offensive that they were planning against the Peruvian military. Because the petitioner has failed to show past persecution, there's no presumption of a well-founded fear. Thus, he must demonstrate its objective reasonableness based on the country conditions information in the record, and he has not done so. The 1999 country reports, pages 160 and 167 of the record, indicate that the Shining Path is still active, but the threat has been greatly diminished. And at page 182, over 300,000 internally displaced Peruvians have been able to safely return to their homes, given this reduction in the terrorist threat. The 1997 asylum profile is entirely consistent with that. It demonstrates that the setbacks to the Shining Path have forced them to concentrate on their most important enemies and high-profile targets. There's no evidence in this record that the petitioner is either of those. And critically, he hasn't submitted any objective evidence to the contrary. He mentions this resurgence in rural areas in Peru, but there's really no objective evidence that refutes these State Department reports. And finally, this country conditions information is bolstered by the testimony in the record that his younger brothers, all of whom would be of fighting age at this point, continue to live safely in Peru. I believe the next youngest brother is currently residing in Lima. And my final point is only that this encounter with the Shining Path took place in 1992, December of 1992, so it's been almost 14 years at this point. And there's just been no showing, again, to the more likely-than-not standard that he would suffer persecution at this point. And if the court has no questions, I'm happy to wrap up. Thank you very much. No questions. Thank you. We thank both counsel. This case is now submitted for decision. The next case on the argument...
judges: Hug, Tashima, Paez